UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAVANNA M. COPE,

   Plaintiff,

v.               Case No. 1:16-cv-1155
                 Hon. Ray Kent
COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.
_____/

## OPINION

   Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for child's insurance benefits.

   Plaintiff was previously found eligible for supplemental security income (SSI) based on a disability as a child. PageID.46. The administrative law judge (ALJ) explained the posture of plaintiff's present claim which arose in 2012:

> As required by law, eligibility for these disability benefits was redetermined under the rules for determining disability in adults when the claimant attained age 18, and on December 10, 2012, it was determined that the claimant was no longer disabled as of December 1, 2012. This determination was upheld upon reconsideration after a disability hearing by a state agency Disability Hearing Officer.
>
> On December 12, 2012, an application for child's insurance benefits was protectively filed. No decision was made on this claim until it was considered in a state agency Disability Hearing Officer's decision dated April 2, 2014, at which time the claim was denied.

PageID.46. After an administrative hearing, the ALJ entered a decision in which he (1) held that plaintiff's disability ended on December 1, 2012, and (2) denied plaintiff's application for child's insurance benefits. PageID.57. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff had not engaged in substantial gainful activity since the date she turned 18 and had not attained the age of 22. PageID.49. Second, the ALJ found that plaintiff had the following severe impairments: a learning disability in math and reading comprehension; and a mood disorder, not otherwise specified. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.49-50.

The ALJ decided at the fourth step "that the claimant has the residual functional capacity [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple, routine tasks, with occasionally [sic] public contact and may not perform any fast paced work." PageID.51. The ALJ also found that plaintiff had no past relevant work. PageID.56. At the fifth step, the ALJ determined that plaintiff could perform unskilled work at all exertional levels in the national economy. PageID.56-57. Representative occupations in the regional economy (Michigan) for a person with plaintiff's RFC included the

4

following jobs at that medium exertional level: custodian (38,000 jobs); laborer (24,000 jobs); and dishwasher (8,000 jobs). *Id*. Accordingly, the ALJ determined that: (1) based upon a redetermination of plaintiff's continuing eligibility for SSI upon attaining age 18 under section 1614(a)(3)(H) of the Social Security Act, her disability ended on December 1, 2012, and that she has not become disabled again since that date; (2) based on the application for child's insurance benefits protectively filed on December 7, 2012, plaintiff was not disabled as defined in section 223(d) of the Social Security Act through the date of the decision (April 3, 2015); and, (3) "[t]he agency should take action to cease benefits payments." PageID.57.

### III. DISCUSSION

Plaintiff raised three errors on appeal:

**A.  The ALJ erroneously misidentified school psychologist Joshua VanPelt, ED.S. as an unacceptable medical source and failed to give appropriate weight to his opinions.**

The ALJ addressed opinions expressed by school psychologist VanPelt as follows:

> Joshua Van Pelt, Ed.S., who worked with the claimant at Kent Vocational Options, offered in October 2014 that the claimant was not adequately prepared to function successfully as an independent adult (Ex 19F). Mr. Van Pelt also opined in December 2014 and January 2015 that the claimant's neurological complexities and corresponding effects would continue to impede the claimant's opportunity to function as an adult (Ex 30F/7 and 31F). Finally, Mr. Van Pelt indicated the claimant had marked difficulty related to detailed instructions, maintain concentration and attention, perform activities within a schedule such as attendance and punctuality, and work with or near others without being distracted. She was also markedly limited in her ability to complete a normal workday/workweek, accept instruction or react to criticism, get along with others without distracting them, respond to work setting changes, and set realistic goals or make plans. Lastly, the claimant had some moderate difficulty in areas such as handling simple instructions, sustaining an ordinary routine, interact with the public, and ask simple questions or request assistance (Ex 34F).

5

> However, although Mr. Van Pelt is familiar with the claimant, he is not an acceptable medical source for Social Security purposes. Therefore, controlling weight cannot be given to his opinions. Nevertheless, controlling weight would not be given to such opinions because they are not entirely consistent with the evidence. In this case, despite the severe limitations offered by Mr. Van Pelt, the claimant performed many normal activities of daily living, communicated with others, cared for herself, shopped in stores, did household chores, and managed to travel to and from Michigan to Pennsylvania to visit an "on-line" acquaintance in the summer of 2013. These factors alone, but especially when viewed in light of the claimant's near lack of any mental health treatment, do not support this opinion. Therefore, the opinions of Mr. Van Pelt are given little weight.

PageID.54.

Because Mr. Van Pelt was a school psychologist, PageID.544, the ALJ erred in stating that Van Pelt was not an acceptable medical source. *See* 20 C.F.R. § 416.913(a)(2)[1] (acceptable medical sources who can provide evidence to establish an impairment include "school psychologists, or other licensed and certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing intellectual disability, learning disabilities, and borderline intellectual functioning only"). Defendant concedes that "the ALJ inaccurately stated that the psychologist was not an acceptable medical source," but then states that ALJ "nonetheless assessed the weight of the opinions from the examining school psychologist correctly, in consideration of the remaining evidence of record." Defendant's Brief (ECF No. 13, PageID.722). Defendant apparently contends that the ALJ's failure to identify Mr. Van Pelt as an acceptable medical source was harmless error because the ALJ ultimately evaluated Van Pelt's opinions. *See generally, Morris v. Commissioner of Social Security*, No. 1:11-cv-154, 2012 WL 4953118 at *11 (W.D. Mich. Oct. 17, 2012) ("[o]nly acceptable medical sources can express medical opinions entitled to controlling weight under the treating physician rule"). The Court disagrees.

---

[1] The Court notes that the regulations have since been amended.

6

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004);

20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ's alternative discussion regarding Mr. Van Pelt did not contain the analysis required for the review of opinions expressed by an acceptable medical source. Accordingly, this case should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Mr. Van Pelt's opinions.

> **B.    The ALJ erroneously gave "great weight" to GAF scores from agency examiners and other sources.**

Plaintiff contends that the ALJ erred by giving "great weight" to her GAF scores. The Court agrees. The Global Assessment of Functioning (GAF) score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

As the Sixth Circuit explained in *Kennedy v. Astrue*, 247 Fed. Appx.761 (6th Cir. 2007):

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

*Kennedy*, 247 Fed. Appx. at 766. The Sixth Circuit observed that a GAF score "may have little or no bearing on the subject's social and occupational functioning," *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir.2006), and rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score, *Rutter v. Commissioner of Social Security*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). *See generally, Hardaway v. Secretary of Health & Human Services*, 823 F.2d 922, 927 (6th Cir.1987) ("the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence"). Furthermore, there are no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*, 167 Fed. Appx. at 511. *See Oliver v. Commissioner of Social Security*, 415 Fed. Appx. 681, 684 (6th Cir. 2011) ("[t]he GAF scale . . . does not have a direct correlation to the severity requirements in [the agency's] mental disorders listings"), quoting Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (Aug. 21, 2000).

Here, the ALJ stated in pertinent part:

> Robert Griffith, Psy. D., a psychological consultative examiner, opined the claimant's prognosis was guarded, and through a GAF score of 58, indicated the claimant had, at most, only moderate difficulty in social or occupational functioning (Ex 10F). Although Dr. Griffith provided no explanation of what was meant by a guarded prognosis, the GAF score of 58, which indicated the claimant had, at most, only moderate difficulty in social or occupational functioning is generally consistent with the evidence. . . Overall, the GAF score given by Dr. Griffith is consistent with the other GAF scores of record from social workers who briefly met the claimant

9

that ranged from 53 to 65 (Ex 32F/4; 33F/5 and 11). Therefore, as there is no indication of what constituted a guarded prognosis, this part of Dr. Griffith's opinion is given little weight. Yet, because of the general consistency in the GAF scores contained in the record covering the period at issue, even though GAF scores do not provide a function-by-function assessment of the claimant's abilities, insofar as they indicated the claimant had rather mild to moderate difficulties in functioning, the GAF scores are given great weight.

PageID.55.

Based on this record, the ALJ's near total reliance on GAF scores and assignment of great weight to those scores is contrary to the reasoning set forth in *Oliver*, *Kennedy* and *Kornecky*. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Griffith's opinion.

> **C.** **The ALJ improperly failed to find plaintiff fully credible and did not acknowledge or consider the testimony of her stepfather.**
>
> **1.** **Plaintiff's credibility**

Plaintiff contests the ALJ's credibility determination. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that the Sixth Circuit has stated that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made

10

by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determination must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ found that plaintiff was not fully credible, stating in pertinent part:

At the hearing, the claimant testified that she did not feel that she could live independently because she forgot things easily. She also stated she could not handle being by herself in the community because of anxiety and panic attacks. Moreover, she indicated she spent most of her time in her room. However, she added that she spent about seven to eight hours each day at her vocational school, and during this time, she spent two to three hours a day on a worksite. Yet, contrary to her allegations of disability, she admitted that she generally did well in the performance of her job duties.

She also testified that she could not use public transportation. However, the record revealed she was able to use public transportation in the past, but did not do so in Grand Rapids, Michigan, because she had only recently moved to Grand Rapids. Moreover, and in stark contrast to the level of impairment to which the claimant alleges, she successfully traveled by herself from Michigan to Pennsylvania and back in the summer of 2013 (Ex 33F/4).

The claimant also stated that part of her training also involved general life skills, such as sweeping, washing dishes, managing a checkbook, and cleaning. Additionally, the record documented she did her own laundry, used a computer and phone without problems, paid her own phone bill, shopped in stores, communicated with others over the Internet, and was capable of caring for herself.

PageID.51-52.

The ALJ identified inconsistencies in the record which provide substantial evidence for the credibility determination. Based on this record, there is no compelling reason to disturb the ALJ's determination. *See Smith*, 307 F.3d at 379. Accordingly, this claim of error will be denied.

### 2. Testimony of plaintiff's stepfather

Plaintiff contends that the ALJ erred for failing to address the testimony of her stepfather, Brian Soddy, who has known her for 16 years and has been plaintiff's primary caregiver since her mother passed away in 2012. PageID. 327, 715. Specifically, plaintiff contends that "[s]ince Administrative Law Judge Prothro didn't even consider [Mr. Soddy's] testimony, his decision is flawed and should be reversed." Plaintiff's Brief at PageID.715. Plaintiff's claim of error will be denied because the ALJ's decision did consider Mr. Soddy's opinions. *See* PageID.56 ("[t]he opinions of the claimant's stepfather have been weighed and considered").

## IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate the opinions of Mr. Van Pelt and Dr. Griffiths. A judgment consistent with this opinion will be issued forthwith.

Dated: September 11, 2017 /s/ Ray Kent
RAY KENT
United States Magistrate Judge